UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

=======================================
JAMES MOHER                             :
                                        :
    Plaintiff,                         :    Case No.
                                        :
    Versus                             :
                                        :
ZIP CO. US INC.                         :
                                        :
    Defendant                          :
=======================================

**COMPLAINT FOR UNPAID WAGES AND COMMISSIONS,
BREACH OF CONTRACT OR (IN THE ALTERNATIVE) BREACH OF
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND RETALIATION**

Plaintiff, **JAMES MOHER** (hereinafter "Mr. Moher"), through his counsel, the Law Office of Matthew T. Miklave, PLLC, and for his complaint against Zip Co. US Inc. (hereinafter "**ZIP CO.**" or the "Defendant"), alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for Defendant's failure to pay wages and commissions, breach of contract or (in the alternative) breach of the implied covenant of good faith and fair dealing, and unlawful retaliation for asserting rights under the New York Labor Law. Mr. Moher seeks unpaid wages and commissions, compensatory damages, liquidated damages, statutory damages pursuant to New York Labor Law, punitive

damages, attorneys' fees, costs, and any other relief deemed just and proper by this Court.

## THE PARTIES

2. Mr. Moher is a citizen and resident of the United States and the State of Connecticut and resides in Fairfield, Connecticut.

3. Defendant is a corporation organized under the laws of the State of Delaware. Defendant's principal place of business is 10 Union Square West, Floor 10, New York, New York 10003.

4. The amount in controversy exceeds $75,000, exclusive of interest and costs.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. The Court also has supplemental jurisdiction under 28 U.S.C. §1367(a) over claims for unpaid wages and commissions as those claims arise out of a common nucleus of operative facts, and form part of the same case or controversy under Article III of the Constitution of the United States.

7. Venue in this Court is proper under 28 U.S.C. §1391(b)(1) and (2) because the Defendant resides in this judicial district, or a substantial part of the events or omissions occurred in this judicial district.

### NATURE OF THE CASE

### DEFENDANT FAILED AND REFUSED TO PROVIDE A WRITTEN COMMISSION SALES PLAN

8. Defendant hired Mr. Moher in or about January 2023. Defendant paid Mr. Moher an annual salary.

9. In or about September 2023, Defendant gave Mr. Moher additional responsibilities and duties, including sales duties, and place him on a commission sales plan. As of in or about September 2023, more than 50% of Mr. Moher's job duties involved sales or revenue generation.

10. Thus, as of in or about September 2023, Defendant employed Mr. Moher and other coworkers as commission salespersons within the meaning of New York Labor Law Section 190.

11. As of September 2023, Mr. Moher and other employees were working under the terms of a written commission sales plan that by its terms expired on June 30, 2024.

12. In or about June 2024, the written commission sales plan previously provided to Mr. Moher expired. While Defendant promised to issue a new commission

sales plan, it failed to do so, contrary to the obligations of Sec. 191 of the New York Labor Law.

13. Between June 2024 and January 29, 2025, Mr. Moher and other employees complained to Defendant's senior executives that the commission sales plan had expired, and they were entitled to a written commission sales plan. Specifically, Mr. Moher and other employees complained about the absence of a written commission sales plan on or about June 25, 2024, July 2024, August 2024, September 24, 2024, October 15, 2024, October 24, 2024, November 1, 2024, November 14, 2024, November 20, 2024, and November 21, 2024.

14. Notwithstanding their requests or demands that Defendant provide the promised commission sales plan as required by New York Labor Law Section 191(1)(c), Defendant failed and refused to do so.

15. At the time Mr. Moher and his coworkers complained about the absence of a commission sales plan, New York Labor Law Section 191(1)(c) required commission sales plans to be set out in a writing and signed by both the employer and the employee

### DEFENDANT PROMOTES AND REWARDS MR. MOHER BASED ON HIS PERFORMANCE

16. In August 2023, after less than eight months of employment, Defendant gave Mr. Moher a positive performance review and, even though Defendant deemed it a

4

"challenging" year for the company, awarded Mr. Moher a bonus based on his performance.

17. In February 2024, Defendant advised Mr. Moher that it was promoting him to a newly created position. Between February 2024 and June 2024, Mr. Moher negotiated the terms of his promotion, including job title, job duties and compensation.

18. At the time, Mr. Moher was actively working to finalize a significant deal with GameStop. Defendant was well aware of Mr. Moher's role in securing the GameStop deal and committed that Mr. Moher would be paid commissions on that transaction. Significantly, Mr. Moher's direct supervisor sent Mr. Moher a text message stating "you are correct on GameStop. You get *full commission credit on that one for sure*."

19. Mr. Moher expressly relied on the representation that he would receive "full commission credit" on the GameStop transaction when negotiating his salary and job responsibilities associated with the promotion.

20. In June 2024, Defendant officially promoted Mr. Moher to Manager, US GTM Strategy & Enablement. As part of his promotion, Defendant entered into a written employment agreement with Mr. Moher (hereinafter the "Agreement"). That Agreement provided, among other things, that Mr. Moher would earn an annual base salary of $130,000, plus commissions of 5% of net revenue for the first 12 months for so-called

5

"White Space / Exploratory Verticals," and 5% of revenue on RFPs. A copy of the written employment agreement is annexed as Exhibit A.

21. After Defendant promoted Mr. Moher, on July 1, 2024, Defendant and GameStop entered into a long-term agreement with Defendant projected to generate in excess of $9.7 million in annual revenue to Defendant

22. The Agreement explicitly provided that Defendant would pay Mr. Moher commissions on sales he closed during his employment. Furthermore, the Agreement did not require Mr. Moher to remain employed in order to receive commissions. Thus, by its terms, Mr. Moher is entitled to commissions even after his employment ended. *See Arbeeny v. Kennedy Exec. Search*, 71 A.D.3d 177 (1st Dept. 2010).

23. In August 2024, based on his continued excellent work performance, Defendant granted Mr. Moher an additional performance bonus and company stock, again recognizing him for his outstanding performance.

24. In or about January 2025, Defendant paid Mr. Moher commissions on the GameStop transaction totaling $1,700.00, thus recognizing Mr. Moher's entitlement to be paid earned commissions.

25. Upon information and belief formed after diligent inquiry, the payment made to Mr. Moher did not reflect the commissions he was due under his written employment agreement.

26. Upon information and belief formed after diligent inquiry, given that Defendant estimated that the GameStop agreement would generate more than $9.7 million in annual revenue, Mr. Moher expected to earn upwards of $485,000 in commissions during the first year of the Zip-GameStop arrangement.

### **DEFENDANT TERMINATES MR. MOHER WITHOUT CAUSE**

27. On January 29, 2025, Defendant's executives suddenly called Mr. Moher to a meeting during which they announced Defendant's decision to terminate Mr. Moher effective immediately. During that meeting, Defendant's officials admitted that they did not have "cause" to terminate Mr. Moher. Indeed, the officials praised Mr. Moher for his excellent work while employed and offered him positive references. During his termination meeting, Defendant's officials falsely told Mr. Moher that his position had been eliminated as part of a reorganization.

28. Mr. Moher is informed and believes that other successfully performing sales employees were also terminated at or around the same time. Indeed, with the exception of a single employee, all sales employees terminated in January 2025 had secured or were near securing lucrative deals that would have required Defendant to pay them commissions.

29. Significantly, some or all of the sales employees terminated in January 2025 had complained to the Defendant's senior leaders about the absence of a written

7

commission sales plan, a commission sales plan required by New York Labor Law Section 191(1)(c).

30. While Mr. Moher was told on January 29, 2025 that his termination was due to a business reorganization and the elimination of his position, two days later, Mr. Moher learned that his position was advertised for hiring on LinkedIn. Mr. Moher was never offered the opportunity to apply for the newly "reorganized" position, proving that the only reason he was terminated was because Defendant sought to avoid the obligation to pay him the wages and commissions he had already earned.

31. Defendant failed and refused to pay Mr. Moher all wages and commissions due within the time period required under New York law. Accordingly, Defendant faces a statutory penalty equal to 100% of the wages and commissions unlawfully withheld.

32. Defendant's actions were willful, malicious, and intended to deprive Mr. Moher of the benefits he earned under the Agreement.

### FIRST CAUSE OF ACTION – FAILURE TO PAY WAGES AND COMMISSIONS DUE

33. Mr. Moher incorporates by reference paragraphs 1 through 32 as if set forth in full.

34. At the time Defendant terminated Mr. Moher, the Defendant owed Mr. Moher earned and unpaid commissions in an amount to be determined at trial.

35. The Defendant failed to pay Mr. Moher the owed commissions in violation of the New York Labor Law.

36. As a result of Defendant' actions, Mr. Moher has suffered damages, including but not limited to the unpaid wages and commissions, costs, and attorneys' fees.

37. Mr. Moher seeks relief including twice the full amount of unpaid wages and commissions, costs, and reasonable attorneys' fees as allowed under the New York Labor Law.

**SECOND CAUSE OF ACTION – BREACH OF CONTRACT**

38. Mr. Moher incorporates by reference paragraphs 1 through 37 as if set forth in full.

39. The Agreement constitutes a valid and enforceable contract between Defendant and Mr. Moher.

40. That written contract expressly provided that Mr. Moher would be paid commissions he earned for deals that closed during his employment. Significantly, the written contract did not require Mr. Moher to remain employed for the commissions to be owed. Indeed, the written contract expressly provides that it remains in force and full effect even after the termination of Mr. Moher's employment.

41. Mr. Moher fully performed his obligations under the Agreement by closing the sales contracts that generated commissions owed to him.

42. Defendant breached the Agreement by failing to pay Mr. Moher the earned commissions due under its terms.

43. As a direct result of Defendant's breach, Plaintiff has suffered monetary damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION –
### IN THE ALTERNATIVE TO THE SECOND CAUSE OF ACTION –
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

44. Mr. Moher incorporates by reference paragraphs 1 through 43 as if set forth in full.

45. Under New York law, every contract includes an implied covenant of good faith and fair dealing requiring that neither party act in a manner that deprives the other party of the benefits of their bargain.

46. At the time he negotiated the terms of his employment agreement, Defendant represented to Mr. Moher that he would be paid "full commissions" on the GameStop deal and, thus, any concerns he had about salary or other compensation were unwarranted.

47. Mr. Moher expressly relied on the Defendant's assurances that he would receive "full commissions" on the GameStop transaction.

48. By terminating Mr. Moher's employment without good cause shortly after he closed a major sales deal and in order to avoid paying him the substantial commissions he had earned, Defendant breached its implied duty of good faith and fair dealing.

49. At the time it terminated Mr. Moher, Defendant asserted that it had "restructured" or "eliminated" Mr. Moher's job and that his services were no longer required. However, these statements were deliberately false and misleading. Defendant had not eliminated Mr. Moher's position, as evidenced by the fact that a nearly identical job was created and posted within two days.

50. Mr. Moher is informed and believes that Defendant made these false statements in order to hide and obscure the reasons for terminating him – that it simply did not want to pay him the commissions and wages he had earned while employed.

51. Mr. Moher is informed and believes that in terminating him to avoid paying the wages and commissions he had already earned, Defendant breached the implied covenant of good faith and fair dealing in his employment contract.

52. Defendant's actions were designed to undermine Plaintiff's ability to enjoy the fruits of his labor and constituted bad faith conduct.

53. As a direct result of Defendant's breach of the implied covenant of good faith and fair dealing, Mr. Moher has suffered significant financial harm.

## FOURTH CAUSE OF ACTION –
## RETALIATION IN VIOLATION OF NEW YORK LABOR LAW

54. Mr. Moher incorporates by reference paragraphs 1 through 53 as if set forth in full.

55. When Mr. Moher and his co-workers complained about the lack of a written commission sales plan to replace the one that expired on June 30, 2024, Mr. Moher and his co-workers were engaged in activity protected by the New York Labor Law, namely demanding that Defendant comply with the requirements of New York Labor Law Section 191(1)(c).

56. Defendant terminated Mr. Moher and his co-workers in whole or in part because of their complaints about the lack of a written commission sales plan.

57. By terminating Mr. Moher because he and his co-workers engaged in activity protected by the New York Labor Law, Defendant unlawfully retaliated against Mr. Moher for his activity protected by the New York Labor Law.

## PRAYER FOR RELIEF

58. For the reasons set forth above, Mr. Moher seeks:

   a. Damages based on the Defendant's failure to pay all wages and commissions due, in an amount to be determined at trial (but estimated to be upwards of $485,000 for the first year of the Zip-GameStop arrangement);

    b. Statutory damages equal to 100% of the wages and commissions due Mr. Moher because they were not paid within the time period specified by New York law;

    c. Compensatory damages in an amount to be determined at trial;

    d. Punitive damages in an amount to be determined at trial;

    e. Prejudgment interest in an amount to be determined by the Court;

    f. Post-judgment interest in an amount to be determined by the Court;

    g. Costs and reasonable attorneys' fees incurred in this action as provided by New York law;

    h. Such other and further relief as justice and equity require.

Respectfully submitted,

**THE LAW OFFICE OF MATTHEW T. MIKLAVE**, PLLC

*Matt Miklave*_____      June 2, 2025
Matthew T. Miklave (NY Bar No: 2638476)
Attorney-at-Law
Matt@Miklavelaw.com

2 Belden Avenue
P.O. Box 2094
Norwalk, Connecticut 06852
(203) 434-4093